IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01488-NRN

THE FOWLER GROUP LLC,

Plaintiff,

v.

AMY TALLENT and
THE TALLENT COMPANY LLC d/b/a TALLENT CO. REAL ESTATE,

Defendants.

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT (ECF No. 50)**

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court for all purposes upon consent of the parties, ECF No. 20, and an Order of Reference by Chief Judge Brimmer pursuant to 20 U.S.C. § 636(c) on August 10, 2023, ECF No. 21. Although Judge Varholak was the original magistrate judge assigned to the case, on Judge Varholak's recusal on June 4, 2024, the matter was reassigned to the undersigned. ECF No. 43.

This matter comes before the Court on Defendants Amy Tallent and The Tallent Company LLC's Motion for Summary Judgment, filed July 29, 2024 (the "Motion"). ECF No. 50. Plaintiff, The Fowler Group LLC ("TFG") filed a response in opposition on August 19, 2024. ECF No. 84. Defendants filed their reply in support of the Motion on September 3, 2024. ECF No. 93. The Court heard oral argument on the Motion on September 24, 2024. For the reasons stated below, Defendants' Motion will be **DENIED.**

**I.    Background**

This case is, at its heart, a trade dress dispute between real estate brokers over the use of sunflowers in the branding of Mrs. Tallent's company, The Tallent Company LLC d/b/a Tallent Co. Real Estate.

This recitation of facts is drawn from the materials submitted in the summary judgment briefing, while viewing all the facts in the light most favorable to the non-moving party—the Plaintiff.

Plaintiff TFG is a real estate brokerage managed by its sole owner Brienne Fowler. TFG is the owner of a federally registered sunflower trademark described as "a flower design consisting of circle [sic] surrounded by 3 rings and 16 petals." Per the Complaint, since October 2016, TFG has been using not just the trademarked sunflower logo, but sunflowers generally, as part of its trade dress and branding. ECF No. 2 at 5–7.

In 2014, Mrs. Tallent launched The Tallent Company LLC, a marketing and communications firm servicing government entities. In May 2019, TFG entered a communications services agreement with The Tallent Company LLC. In other words, TFG agreed to use Mrs. Tallent's skills in its marketing efforts. From July 2019 through September 2020, The Tallent Company LLC provided TFG with general communications services, including assisting TFG with its social media accounts and press releases.

Then in 2020, marketing and communications expert Mrs. Tallent earned her real estate license. Having provided marketing and communications services to TFG, she elected to become an independent contractor and sales associate of TFG with Coldwell

Banker. On October 7, 2020, Mrs. Tallent entered into a Team Agreement with TFG. Under the Team Agreement, Mrs. Tallent became a "team member" of TFG. Under the Team Agreement, like other agents affiliated with TFG, Mrs. Tallent was entitled to obtain transaction leads from TFG in exchange for a percentage of Mrs. Tallent's commissions on all transactions.

The Team Agreement contained a provision identifying the geographical location of the TFG real estate market as within a 5-mile radius of Erie, Colorado. The Team Agreement contained no provisions or other requirements regarding sunflowers or any party's purported trade dress. However, upon joining TFG, Mrs. Tallent began using the group's marketing collateral while marketing her own real estate services. This included the use of the trademarked sunflower motif and extensive use of sunflowers generally.

During her tenure as a team member of TFG, Mrs. Tallent primarily marketed and offered real estate services in Larimer and Weld Counties, with a focus in Johnstown, CO. Sometime in early 2022, while still a TFG team member, Mrs. Tallent began using a different style of sunflower in connection with the real estate services she offered in northern Colorado, under the name "The Amy Tallent Team." The sunflower image logo used by Mrs. Tallent (the "NoCo Sunflower") was created by Mrs. Tallent's husband. TFG did not incorporate the NoCo Sunflower into its marketing, but the use of a sunflower or sunflowers by Mrs. Tallent in connection with her work as a team member of TFG was consistent with TFG's overall use of sunflowers to market TFG's real estate services. While most TFG team members were required to use the TFG trademarked sunflower in all their marketing, Mrs. Tallent was excepted from this requirement. Instead, she used the NoCo Sunflower.

Ms. Fowler has admitted that the NoCo Sunflower is part of the Amy Tallent Team's "brand" and that the NoCo Sunflower is Mrs. Tallent's personal property. Earlier in Mrs. Tallent's tenure with TFG, in approximately December of 2020, the parties agreed that if Mrs. Tallent were to leave TFG, Mrs. Tallent would retain the right to use the phrases "Experience Johnstown" and "Experience Northern Colorado," which had been originally been crafted by Brie Fowler to expand engagement for TFG realtors. See ECF No. 76 (Defendants' Ex. Z). Beyond the "Experience Johnstown" and "Experience Northern Colorado" concepts, it was Mrs. Tallent's understanding that she was permitted to take the branding that she and her company had developed with her upon her departure. Mrs. Tallent would have never put so much work, or invested so much time, into Defendants' branding had she possessed a contrary understanding.

On January 19, 2023, Mrs. Tallent gave notice that she would be leaving TFG, having decided to start her own independent brokerage. ECF No. 75 (Defendant's Ex. Y).

Mrs. Tallent and her team then started doing business as "Tallent Co. Real Estate." The colors used by Mrs. Tallent in marketing her new business (green, ecru, dark gray, and white) are different from the colors used in TFG's branding. The TFG sunflower and the NoCo Sunflower do not look alike. But, regardless of the lack of similarity between the forms of sunflowers used by the two real estate brokerages, on February 21, 2023, TFG, through counsel, sent a cease and desist letter to Defendants, demanding that they "promptly cease use of any and all sunflowers in connection with real estate services." ECF No. 82 (Defendants' Exh. FF).

The cease and desist letter reads in part as follows:

4

> As you further know, TFG has used imagery of sunflowers in connection with its brand since at least 2016. In fact, in your capacity as a marketing and graphic design professional, you and your firm, The Tallent Company, were integral in developing this brand for TFG, and in articulating the sunflower as a symbol of the brand, in bringing joy into the lives of clients and prospective clients as they work through the real estate process with TFG agents. Moreover, as an agent with TFG from August of 2020 through January 2023, you were aware of the Group's brand strength, and accompanying brand guidelines, which require specific use of the sunflower assets for all business associated with TFG. . . .
>
> Due to its extensive and longstanding use of the Sunflower Marks and Trade Dress, and the fact that sunflowers are completely arbitrary for use in connection with real estate services, the relevant public has come to recognize the sunflower as an exclusive trademark of TFG, and a symbol of its quality reputation for providing real estate services in Boulder and Weld Counties, and the surrounding areas. . . .
>
> Particularly given your former ties to TFG, and the fact that the only other agents in your office *also* were formerly affiliated with TFG,[] Coldwell Banker is concerned that real estate consumers will mistakenly believe that your group remains affiliated with Coldwell Banker and TFG, and that their reputations and goodwill should extend to your directly competing business. As such, your use of sunflower motif in your branding constitutes trademark infringement and unfair competition in violation of both federal and state laws.
>
> While Coldwell Banker is willing to assume that your continued use of the sunflower motif has been due to misunderstanding about TFG's exclusive trademark rights rather than your intent to infringe them, Coldwell Banker must nonetheless insist that you promptly cease use of any and all sunflowers in connection with real estate services, and agree not to use that motif, or anything similar to the Sunflower Marks and Trade Dress going forward.

*Id.*

Fowler originally brought claims of (1) trade dress infringement and unfair competition in violation of 15 U.S.C. § 1125(a); (2) breach of contract; and (3) breach of fiduciary duties. But, on April 18, 2024, the parties stipulated to the dismissal of the breach of contract and breach of fiduciary duty claims. *See* ECF No. 38. So, this case becomes focused on the question of whether Mrs. Tallent's use of sunflowers and the

5

(NoCo Sunflower in particular) in her marketing and branding somehow infringes on TFG's rights.

The trade dress infringement claim arises from Mrs. Tallent's use of the NoCo Sunflower and sunflowers generally in the marketing of her new company. TFG alleges that it is entitled to the exclusive use of sunflowers in marketing real estate services in northern Colorado because, through the use of sunflowers in connection with marketing its real estate services, TFG has developed a distinctive "look and feel" in Boulder, Weld, and Larimer Counties. Therefore, the use of sunflowers represents "quality service and goodwill with the consuming public." ECF No. 2 at 23–24. By using sunflowers in connection with the marketing of her own competing real estate services, Mrs. Tallent allegedly misappropriated TFG's sunflower trade dress while competing for the same clientele, in the same geographic regions, and for the same and related services. *Id.* TFG alleges that this constitutes a violation of the Lanham Act, 15 U.S.C. §§ 1116, 1117.

## II. Defendants' Motion

Defendants argues that TFG's trade dress infringement claim fails as a matter of law. First, Defendants assert that TFG's claimed trade dress is not inherently distinctive such that it serves to identify a particular source. In addition, Defendants argues that TFG has failed to even articulate what its trade dress is. Defendants argues that the general suggestion that TFG's trade dress is anything associated with sunflowers in the northern Colorado real estate market is so vague that it does not allow a court to evaluate how unique and unexpected the design elements are in the relevant market. ECF No. 50 at 14–15.

Second, Defendants argue that the trade dress has not acquired secondary meaning. Secondary meaning requires the trade dress to have "been used so long and so exclusively by one producer with reference to his goods or articles that, in the trade and to that branch of the purchasing public, the [trade dress] has come to mean that the article is his product." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1148 (10th Cir. 2016) (alteration in original) (quoting *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1154 (10th Cir. 2013)). The "ultimate inquiry is whether in the consumer's mind the [trade dress] denotes a single thing coming from a single source." *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1107 (10th Cir. 2020) (quoting *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 978 (10th Cir. 2002)). Defendants insist that TFG has not produced any evidence that would amount to direct evidence of secondary meaning and has not engaged any expert for that purpose. Defendants therefore argue that TFG's claimed trade dress is not distinctive enough to be entitled to legal protection. ECF No. 50 at 18.

Defendants also argue that TFG cannot establish a likelihood of confusion. Defendants assert that the relevant inquiry is whether there is a likelihood of confusion resulting from the total image and impression created by a defendant's marketing of services. Here, Defendants argue that, although they use a sunflower in their marketing, the flower Defendants use (the NoCo Sunflower) is identifiably different from the trademarked flower used by TFG, and The Tallent Company LLC color palette is markedly different from the palette employed by TFG. Defendants argue that because the parties' respective marketing materials are distinguishable based on their visual,

7

aural, and commercial impression, they are dissimilar, and the pronounced differences make the potential of confusion highly unlikely. ECF No. 50 at 20.

Defendants also argue that TFG's claim of unfair competition fails because it is based on and entirely dependent on the trade dress infringement claim. Defendants insist that TFG cannot establish that Defendants made false or misleading statements about the source or origin of their real estate services, which is a required element of TFG's false advertising claim. ECF No. 50 at 25.

### III.   Fowler's Response to Defendants' Motion

Fowler responds to the Motion by asserting that the record shows (or, at a minimum, disputed facts show) that TFG's extensive use of a sunflower motif constitutes a valid, protectible trade dress. TFG asserts that Mrs. Tallent used TFG's sunflower trade dress to promote and identify her real estate services while she was associated with TFG, and this was done with TFG's permission. The lawsuit stems from the fact that, according to TFG, Mrs. Tallent continued to use "*identical* elements" of TFG's sunflower trade dress to promote and identify her competing real estate services after she was no longer associated with TFG. ECF No. 84 at 5.

In terms of disputed material facts, TFG explains that there is evidence that it has used the sunflower motif in branding and marketing its real estate business since at least 2016. In fact, Ms. Fowler in her affidavit explains that "[t]he word 'flower' is a play on 'Fowler,' and [her] family's real estate businesses in the Boulder area have used flower and tree logos since they were first founded in the 1960s by [her] grandfather." ECF No. 86 at 2. Ms. Fowler declares that in 2016, she chose to use sunflowers to promote her real estate business, because "it was personally significant to" her and "it

8

felt logical to use a flower to brand the family business." *Id*. She also equates a sunflower with the qualities she wants to embody as a real estate agent, "stand tall, proud, and strong, face the sun as a sign of strength, nourish others with their seeds, and bring joy into people's lives." *Id*.

According to Ms. Fowler, her business was soon "heavily using sunflower branding." *Id.* This included using sunflowers in social media posts and website, having pictures and paintings of sunflowers in the office, giving clients sunflower-themed gifts, having team-branded sunflower apparel, and using sunflowers on marketing assets, including business cards, listing presentations, and "for sale" signs. Ms. Fowler often dresses in sunflower-print clothes or earrings, and uses pens and paper decorated with sunflowers. Her car is wrapped in TFG's sunflower logo and branding. *Id*. at 2–3.

TFG asserts that when Mrs. Tallent joined TFG as a Marketing Coordinator, she recognized the importance of the sunflower motif to TFG's branding identity. This is evidenced by Mrs. Tallent's August 2019 suggestion to Ms. Fowler: "I think we should do a few posts on why you resonate and the business resonates with a sunflower. We could talk about how they stand tall, strong and proud. How they face the sunlight and provide beauty. Thoughts?" ECF No. 85-3 at 2. The local press even recognized TFG for its strong association with the sunflower, awarding TFG the "Best of the West" title and writing: "Having a sunflower as a symbol is perfect for the Fowler Group because working with Brie's sunny personality makes buying a home so much brighter. They even hand out sunflower starter packs for your garden." ECF No. 85-7 at 4.

As for Mrs. Tallent's NoCo Sunflower, TFG asserts that the NoCo Sunflower was always used with other elements of the TFG's sunflower trade dress, such as other

9

sunflower imagery. Thus, per TFG, the development and use of the NoCo Sunflower as one element of TFG's sunflower trade dress served to further strengthen TFG's branding and presence in the Weld and Larimer County real estate markets. There is evidence that, while TFG allowed Mrs. Tallent to make some modifications to the sunflower trade dress to allow her to focus on her Northern Colorado clientele, she was still working for and with TFG, and her use of sunflowers in her own marketing continued to inure to the benefit of TFG.

TFG points to the fact that when Mrs. Tallent started her own brokerage, the branding in her marketing materials was essentially identical to the branding she used when she was part of TFG. *See, e.g.*, ECF No. 84 at 14 (comparing marketing materials for the "Amy Tallent Team Partnered with The Fowler Group" with Tallent Co. Real Estate materials). Both sets of materials prominently feature the NoCo Sunflower and other sunflowers. TFG argues this will necessarily lead to confusion by consumers.

TFG asserts that its trade dress—using sunflowers and sunflower motifs—is protected because it is (1) nonfunctional and (2) inherently distinctive. ECF No. 84 at 15 (citing *Sally Beauty Co.*, 304 F.3d at 977). And even if not inherently distinctive, TFG's use of sunflowers has become distinctive through secondary meaning.

### IV.  Analysis

The Court finds that there are fact issues here that require a trial to resolve.

The trade dress of a company's product or service is the overall image and appearance, and may include features such as size, shape, color, color combinations, texture, graphics, and even particular sales techniques. A company's trade dress "is eligible for protection under section 43(a) of the Lanham Act if it is so distinctive as to

10

become, in effect, an unregistered trademark." *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1271 (10th Cir. 1988). Protection for a company's trade dress may extend to a single feature or a combination of features. In order to demonstrate trade dress infringement, "the plaintiff must demonstrate (1) that its trade dress is inherently distinctive or has become distinctive through secondary meaning; and (2) likelihood of confusion." *Sally Beauty Co.*, 304 F.3d at 977 (citation omitted). A trade dress is inherently distinctive if its intrinsic nature serves to identify a particular source. *Taco Cabana,* 505 U.S. at 786. Like trademarks, the inherent distinctiveness of a trade dress is categorized as generic, descriptive, suggestive, arbitrary, or fanciful. A trade dress that is not inherently distinctive may acquire distinctiveness through secondary meaning. "In other words, over time customers may associate the primary significance of a dress feature with the source of the product rather than the product itself." *Sally Beauty Co.*, 304 F.3d at 977. And, "[w]hen a trade dress has become distinctive of a product's source, courts have permitted protection" under section 43(a) the Lanham Act. *Id*.

"In addition, the party asserting trade dress infringement bears the burden of demonstrating that the trade dress is not functional." *Id.*; *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 796 (1992). The test for determining functionality is "'whether the protection of the [feature] would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods.'" *Hartford House Ltd.*, 846 F.2d at 1272 (alteration in original) (quoting *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 519 (10th Cir. 1987)). Trade dress is nonfunctional when there are alternative designs available. *Id.* at 1273–74.

On the issue of functionality, the claimed sunflower trade dress is not functional. It is apparent that there are other ways of designating a real estate brokerage than via a sunflower motif. And one can effectively compete in the real estate market without using images of sunflowers. There is nothing functional about the sunflower as a design or branding element for a real estate brokerage.

On the question of whether the sunflower as trade dress is inherently distinctive or has acquired secondary meaning, the Court finds there are genuine issues of fact. The Court agrees that sunflowers are arbitrary representations for a real estate business, as opposed to merely descriptive of the services they represent. But whether TFG has established that the use of any and all sunflowers in the northern Colorado real estate market is inherently distinctive or has acquired distinctiveness through secondary meaning cannot be determined on the materials before the Court now.

Of course, as the movants, Defendants must establish that there is *no possibility* that the claimed sunflower trade dress could be inherently distinctive or could have acquired secondary meaning. And here, while Defendants make extensive arguments on the subject (including providing evidence of at least seven other real estate agents or brokerages using sunflowers in connection with their marketing, *see* ECF No. 83), viewing the evidence in the light most favorable to non-movant TFG, the Court concludes that a genuine issue of material fact exists on these questions. *See Sally Beauty Co.*, 304 F.3d at 978 ("Whether a trade dress has acquired secondary meaning is a question of fact and thus generally should not be decided at the summary judgment stage.").

In reply, Defendants point to the four-part test articulated by the Federal Circuit in *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.* regarding whether a trademark is inherently distinctive:

> [1] whether it was a "common" basic shape or design, [2] whether it was unique or unusual in a particular field, [3] whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods, or [4] whether it was capable of creating a commercial impression distinct from the accompanying words.

568 F.2d 1342, 1344 (C.C.P.A. 1977) (citations omitted). "If a mark satisfies any of the first three tests, it is not inherently distinctive." *In re Chippendales USA, Inc.*, 622 F.3d 1346, 1351 (Fed. Cir. 2010) (citing *Seabrook Foods*, 568 F.2d at 1344 and 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:13 (4th ed. 2008)).

> [I]f the mark is inherently distinctive, it is presumed that consumers will view it as a source identifier. If the mark is not inherently distinctive, it is unfair to others in the industry to allow what is in essence in the public domain to be registered and appropriated, absent a showing of secondary meaning.

*Id.* at 1352. In *Chippendales*, the court upheld the denial of the federal registration of white collar and cuffs as protectible trade dress for the Chippendales company of exotic male dancers. The court agreed with the conclusion that Chippendales' use of a white collar and cuffs was not inherently distinctive in the adult entertainment area, in part because of the use of white cuffs and collar in connection with Playboy bunnies.

Using the *Seabrook* test in the current case would require the consideration of other uses of sunflowers in branding of northern Colorado real estate companies and whether TFG's use of sunflowers is a mere refinement of a commonly adopted form of ornamentation. The Court is not prepared to do this on the limited factual record presently before the Court.

13

There are also fact issues precluding summary judgment on the question of likelihood of confusion. In the trade dress context, the relevant inquiry is "whether there is a likelihood of confusion resulting from the total image and impression created by the defendant's product or package on the eye and mind of an ordinary purchaser." *Sally Beauty Co.*, 304 F.3d at 979 (quoting *McCarthy on Trademarks* § 8:15). The fact that Mrs. Tallent used the NoCo Sunflower as part of her sub-team's branding when she was a team member of TFG (with TFG's agreement) and has continued to use the same NoCo Sunflower to brand her now independent brokerage, at the very least creates a fact issue on the possibility of confusion. *See id.* at 980 (finding genuine issue of material fact on the likelihood of confusion based on strong similarities between the trade dresses, evidence of actual confusion, deposition testimony indicating an intent to copy product line, similarity in the products and manner of marketing, and low degree of consumer care).

In addition, TFG argues that Mrs. Tallent's conduct should be judged under the legal doctrine of "holdover" infringement. ECF No. 84 at 19. Under this doctrine, proof of continued unauthorized use of an original trademark by one whose permission to use the trademark has been terminated is sufficient to establish likelihood of confusion. *See Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454 (6th Cir. 2022), *reh'g denied*, No. 20-3598, 2022 WL 3237492 (6th Cir. Aug. 10, 2022). As the Sixth Circuit has noted, "[w]ithout any need to tick through factors, it should be obvious that consumers will believe, for example, that a pizza restaurant remains affiliated with the 'Little Caesars' chain when a terminated franchisee continues to operate the pizzeria as a Little Caesars." *Id*. at 464. Although there are similarities, this case is not precisely like

described the Little Ceasar's situation. There is evidence that Mrs. Tallent developed and implemented the NoCo Sunflower in part to differentiate herself and her team geographically from TFG, whose market was primarily in a different area. Also, there is evidence that Mrs. Tallent had always communicated her intent to establish her own independent brokerage, and the use of the NoCo Sunflower was explicitly authorized (at least initially) by TFG, along with the use of other branding slogans that Mrs. Tallent has continued to use in her independent brokerage without objection.

But TFG is not moving for summary judgment. Defendants are. And there are disputed issues of fact that preclude summary judgment in Defendants' favor. A finder of fact could reasonably conclude that Mrs. Tallent was using versions of the sunflower trade dress, including the NoCo Sunflower, while she was a team member of TFG, and in doing so, she signaled her affiliation with TFG, which in turn provided her with goodwill and brand identity that TFG had built and invested in. Then, Mrs. Tallent disassociated herself contractually from TFG, but continued to use the same trade dress, including the NoCo Sunflower, to brand and market her now independent operation, leading to the possibility of confusion.

The Court observes two distinct issues here. First, whether Mrs. Tallent can be barred from using any form of sunflower at all in the branding of her new company because TFG has established, through the pervasive use of sunflowers in the branding of its real estate services in the northern Colorado market, a distinctive trade dress protectible under the Lanham Act. And second, even if TFG does not have an effective monopoly on the use of sunflowers in marketing real estate services in Northern Colorado, whether Mrs. Tallent's continued use of the NoCo Sunflower—the same

15

sunflower logo that she used while a TFG team member—was itself a violation of TFG's rights. Viewed in the light most favorable to non-movant TFG, there are genuine issues of fact on all these issues that require a trial.

## V.    Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 50) is **DENIED**.

Dated at Denver, Colorado this 31st day of October, 2024

*[signature]*
_____
N. Reid Neureiter
United States Magistrate Judge